UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIKA BORTOLOTTI,

              Plaintiff,

v.                                        Case No.  8:19-cv-1072-T-24 AAS

GRACEPOINT, ET AL.,

              Defendants.

_____/

## ORDER

This cause comes before the Court on five motions: (1) St. Joseph's Hospital's Motion to

Dismiss (Doc. No. 8), which Plaintiff opposes (Doc. No. 18); (2) Agency for Community

Treatment Services, Inc.'s Motion to Dismiss (Doc. No. 12), which Plaintiff opposes (Doc. No.

20); (3) Gracepoint's Motion to Dismiss (Doc. No. 16), which Plaintiff opposes (Doc. No. 22);

(4) Pamela Troutman's Motion to Dismiss (Doc. No. 31), which Plaintiff opposes (Doc. No. 39);

and (5) St. Joseph's Hospital's Motion for Sanctions (Doc. No. 23), which Plaintiff opposes

(Doc. No. 33).

## I.  Standard of Review for Motions to Dismiss

In deciding a motion to dismiss, the district court is required to view the complaint in the

light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959,

962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon

which she bases her claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim

showing that the pleader is entitled to relief in order to give the defendant fair notice of what the

claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

555 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (citation omitted).  While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level."  Id. (citation omitted).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Plaintiff Erika Bortolotti alleges the following in her complaint (Doc. No. 1): On Friday, May 5, 2017, Plaintiff went to a bar with a friend and had drinks to celebrate Cinco de Mayo. After a few hours, Plaintiff's friend became concerned about Plaintiff, and Plaintiff was taken to Defendant St. Joseph's Hospital, Inc. ("St. Joseph's").  According to Plaintiff, St. Joseph's involuntarily committed her under the Hal S. Marchman Alcohol and Other Drug Services Act, Florida Statutes § 397.301 et seq. ("Marchman Act"), despite the fact that she did not qualify for commitment under the Marchman Act.[1]

---

[1]The Marchman Act sets forth specific criteria for the involuntary commitment of individuals for assessment and treatment services related to substance abuse.  Fla. Stat. § 397.675.  Generally, it provides that a person meets the criteria for involuntary admission if two requirements are met.  Fla. Stat. § 397.675.  First, there must be a good faith reason to believe that the person is substance abuse impaired and, because of such impairment, the person has lost the power of self-control with respect to substance abuse.  Fla. Stat. § 397.675.  Second, the person must either: (1) be in need of substance abuse services but they are incapable of appreciating their need for such services due to their substance abuse impairment; or (2) be a real and present threat of substantial harm to themselves or another.  Fla. Stat. § 397.675.  If a person meets the criteria, they can be involuntarily committed if there is a physician's certification and an application for emergency admission.  Fla. Stat. § 397.679; Fla. Stat. § 397.6793.  Within 72 hours after an emergency admission, the person must be released, unless the person consents to remain voluntarily or a petition for involuntary assessment or treatment has been filed with the court.  Fla. Stat. § 397.6797.

Plaintiff was transferred from St. Joseph's to a facility run by Defendant Agency for Community Treatment Services, Inc. ("ACTS"). ACTS physicians never evaluated Plaintiff to determine whether she met the Marchman Act criteria. While there, Plaintiff contends that she was denied communication with her attorney, was illegally drugged, and was imprisoned against her will.

Thereafter, Plaintiff was transferred to Defendant Gracepoint, which is a drug and alcohol rehabilitation facility. Gracepoint never evaluated Plaintiff to determine whether she met the Marchman Act criteria. While there, Plaintiff contends that she was denied communication with her attorney, was illegally drugged with Valium, and was imprisoned against her will.

At some point on Sunday, Plaintiff's attorney contacted Gracepoint to insist that Plaintiff be released. Gracepoint called its director, Defendant Pamela Troutman, and Troutman refused to speak to Plaintiff's attorney or to release Plaintiff. Again, on Monday at 7:00 p.m., Plaintiff's attorney returned to Gracepoint, and Troutman still refused to let Plaintiff's attorney speak with Plaintiff. Plaintiff was not released until she had been held a full 72 hours.

On May 3, 2019, Plaintiff filed this lawsuit against Defendants, in which she asserts 14 claims. She asserts separate § 1983 claims, false imprisonment claims, and assault and battery claims against Troutman, St. Joseph's, ACTS, and Gracepoint. She also asserts a civil conspiracy claim against Defendants, alleging that they conspired to violate her constitutional rights and to falsely imprison her. Finally, she challenges the constitutionality of the Marchman Act. In response, each of the defendants has filed a motion to dismiss.

### III.  St.  Joseph's Motions

St. Joseph has filed a motion to dismiss all of the claims asserted against it, as well as a

motion for sanctions. As explained below, the motion to dismiss is granted in part, and the motion for sanctions is denied.

**A. Section 1983**

Plaintiff asserts a § 1983 claim against St. Joseph's. She alleges that St. Joseph's, acting under color of state law, deprived her of her constitutional right to liberty by involuntarily committing her under the Marchman Act despite the fact that she did not meet the criteria for commitment.

In order to state a claim under § 1983, Plaintiff must allege two things: (1) conduct of a person or entity acting under color of state law; and (2) that such conduct resulted in a deprivation of her rights, privileges, or immunities secured by the Constitution or laws of the United States. See Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). In this case, Plaintiff asserts a § 1983 claim against St. Joseph's, a private hospital, and St. Joseph's seeks dismissal on that basis. Specifically, St. Joseph's argues that Plaintiff fails to state a § 1983 claim, because it did not act under color of state law.

Plaintiff responds that private parties are sometimes deemed to have acted under color of state law for § 1983 purposes. The Eleventh Circuit recognizes three tests to aid courts in determining whether a private actor can be deemed a state actor subject to liability under § 1983. The three tests are: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. Id. Accordingly, the Court will apply each test in order to determine whether Plaintiff can assert a § 1983 claim against St. Joseph's.

**1. Public Function Test**

The first test the Court considers is the public function test. This test permits courts to

find state action on the part of a private party where that party exercises powers that are "'traditionally the exclusive prerogative of the State.'" National Broadcasting Co. Inc. v. Comm. Workers of America, AFL-CIO, 860 F.2d 1022, 1026 (11th Cir. 1988) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974)). A court may not find state action, however, where the powers of a private party are merely "co-extensive" with those of the state. Harvey, 949 F.2d at 1131.

In Harvey, one of the issues before the court was whether the involuntary commitment of the plaintiff-appellant under the state's mental health statute by a private hospital was state action under the public function test. See id. In finding that the private hospital was not a state actor under the public function test, the court stated the following:

> Appellant finally argues that the commitment process is a traditional public function, implying that state law guiding private participation in this function effectively transforms the private participant into a state actor. But this argument does not take the public function analysis far enough. That the private party has powers *co-extensive* with the state is irrelevant; the public function test shows state action only when private actors are given powers (or perform functions) that are "traditionally the *exclusive* prerogative of the State." Few activities are "exclusively reserved to the states." We are unwilling to categorize involuntary commitment in Georgia as a function so reserved to the state that action under the commitment statute transforms a private actor into a state actor.

Id. (internal citations and footnotes omitted).

Thus, while the court in Harvey considered commitment to be a public function – it did not consider the involuntary commitment of mentally ill patients to be a function *so reserved* to the state as to render the private hospital a state actor for the plaintiff's § 1983 claim. See id.; see also Rockwell v. Cape Cod Hospital, 26 F.3d 254, 259 (1st Cir. 1994) (finding that the history of

involuntary treatment related to mental illness was almost exclusively private and "by no means [was it] the exclusive prerogative of the State").  Courts typically find this requisite exclusivity in situations where the state has expressly delegated its responsibilities to a private actor.  See, e.g., West v. Atkins, 487 U.S. 42, 56–57 (1988) (holding that a physician to whom the state had delegated its constitutional duty to provide adequate medical treatment to prisoners had acted under color of state law).

Plaintiff argues that the Marchman Act by its own text reflects that it meets the public function test.  By shifting the practice of holding substance abuse impaired people in jail cells from the criminal justice system to hospitals and treatment facilities, Plaintiff argues that St. Joseph's actions with respect to her involuntary commitment should be considered state action for § 1983 purposes under the public function test.  However, Plaintiff cites no specific authority to support a finding that such commitment has been the *exclusive* function of the State of Florida. See Harvey, 949 F.2d at 1131.  Here, the Marchman Act merely provides for the civil commitment of substance abusers as an alternative to criminal imprisonment – it does not transfer or delegate a legal duty of care that would render St. Joseph's a state actor within the meaning of § 1983.  See West, 487 U.S. at 56.  Given the lack of allegations to show that St. Joseph's performed an exclusively public function by arranging for and providing emergency substance abuse assessment and stabilization services, St. Joseph's cannot be considered a state actor under the public function test.

## 2.  State Compulsion Test

The next test for the Court to consider is the state compulsion test.  This test limits state action to instances in which the state "has coerced or at least significantly encouraged" the

6

conduct at issue.  <u>National Broadcasting</u>, 860 F.2d at 1026.  State compulsion requires more than a showing of approval or acquiescence by the state.  <u>See</u> <u>id.</u> at 1028 (citing <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982)).

The court in <u>Harvey</u> held that Georgia's mental health-based commitment statute was not sufficiently coercive to transform the defendant, a private mental hospital, into a state actor for purposes of the plaintiff's § 1983 claim.  949 F.2d at 1130, 1132.  Rather, the court in <u>Harvey</u> likened the statute to a "licensing provision," enabling hospitals to receive mentally ill patients rather than compelling or encouraging them to do so.  <u>Id.</u>  Likewise, the court in <u>Rockwell</u> echoed this reasoning, ruling that a state law permitting physicians to hospitalize potentially dangerous mentally ill individuals did not rise to the level of coercion or encouragement required to be considered state compulsion.  <u>See</u> <u>Rockwell</u>, 26 F.3d at 257 n.2, 258.

Plaintiff argues St. Joseph's conduct satisfies the state compulsion test on the grounds that St. Joseph's was required to treat Plaintiff under Florida and Federal law.[2]  However, the Court's focus for the state compulsion test in this case is on the specific language of the Marchman Act.  <u>See</u> <u>Harvey</u>, 949 F.2d at 1131.  Like the commitment statute at issue in <u>Harvey</u>, the Marchman Act does not *require* hospitals or physicians to pursue a specific course of action when they encounter a substance impaired patient.  Rather, the Marchman Act sets forth guidelines and procedures under which a physician *may* initiate a patient's involuntary civil commitment.  <u>See</u> Fla. Stat. § 397.6791; Fla. Stat. § 397.679.  The Marchman Act is, at its core,

---

[2] The Emergency Medical Treatment and Active Labor Act ("EMTALA") "places obligations of screening and stabilization upon hospitals and emergency rooms that receive patients suffering from an 'emergency medical condition.'"  <u>Roberts v. Galen of Virginia, Inc.</u>, 525 U.S. 249, 250 (1999); 42 U.S.C. § 1395dd.  Florida has enacted a similar statute regarding emergency medical treatment.  <u>See</u> Fla. Stat. § 401.45(1)(b).

permissive – not mandatory.  As such, it does not rise to the level of encouragement or coercion by the state in order to transform St. Joseph's conduct into state action.

### 3. Nexus/Joint Action Test

 Finally, the Court considers the nexus/joint action test. Under this test, private conduct falls under color of state law where the state "has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise.'" Harvey, 949 F.2d at 1131 (quoting National Broadcast, 860 F.2d at 1026).  The Supreme Court has held that state regulation or the receipt of state funding is insufficient to transform a private party into a state actor.  See Blum, 457 U.S. at 1004, 1011 (holding that a nursing home was not a state actor despite extensive government regulation and state funding).  Rather, this test requires courts to look at the degree of the state's involvement in the private entity's management and control.  See, e.g., Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 297–99 (2001) (treating private athletic association as a state actor due to the "pervasive entwinement" of state school officials in the association's structure and operations).

Plaintiff argues that the State of Florida so far insinuated itself into a position of interdependence by virtue of the Marchman Act as to render St. Joseph's a state actor under the nexus/joint action test.  According to Plaintiff, the content of the Marchman Act itself establishes the pervasive entwinement required for the Court to find joint action.  Specifically, Plaintiff argues that joint action is created by the Marchman Act, which incorporates St. Joseph's into a broader, government-created service provider network and allows St. Joseph's to seize Plaintiff under its authority.  Plaintiff also contends that the state's extensive regulation of private health care facilities is sufficient to make the state a joint participant in St. Joseph's alleged improper

conduct.

A finding of joint action, however, requires the Court to consider the degree of the state's direct involvement in St. Joseph's management and control. Thus, the relevant question here is not whether St. Joseph's exercised its powers co-extensively with the state or even by virtue of state authority, but rather whether the state or a state agent had a direct role in St. Joseph's challenged conduct. See id.

In the instant case, St. Joseph's operates as a wholly private healthcare facility. While the guidelines for a Marchman Act admission are statutorily imposed, request for admission under the Marchman Act is ultimately discretionary. Moreover, courts have held that state regulation and the receipt of state funding, even regarding healthcare facilities, is insufficient to transform a private entity into a state actor for purposes of a § 1983 claim. See Blum, 457 U.S. at 1004, 1011. As such, the facts of the instant case do not support a finding that the state was so far insinuated or entwined in St. Joseph's management and control as to render St. Joseph's a state actor.

### 4. Conclusion

Based on the above, the Court agrees with St. Joseph's that it was not acting under color of state law. As such, Plaintiff's § 1983 claim against St. Joseph's fails, and St. Joseph's motion to dismiss the § 1983 claim is granted.

### B. False Imprisonment

Plaintiff asserts a false imprisonment claim against St. Joseph's based on her contention that St. Joseph's caused her civil commitment under the Marchman Act despite the fact that she did not meet the criteria for involuntary commitment. St. Joseph's moves to dismiss this claim,

arguing that Plaintiff's allegations are conclusory and fail to include sufficient factual allegations to show the required elements for a false imprisonment claim under Florida law.

Plaintiff must allege the following elements to sufficiently state a claim for false imprisonment: (1) the unlawful detention and deprivation of her liberty; (2) against her will; (3) without legal authority or "color of authority;" and (4) which was unreasonable and unwarranted under the circumstances. See Montejo v. Martin Mem'l. Med. Ctr., Inc., 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006). Upon review of the complaint, the Court finds that Plaintiff has sufficiently alleged that St. Joseph's unlawfully detained Plaintiff and deprived her of her liberty against her will by involuntarily committing her under the Marchman Act despite the fact that she did not meet the criteria for involuntary commitment.

St. Joseph's argues that Plaintiff's allegations fail to satisfy the third element for false imprisonment—that its conduct was done without legal authority. Specifically, St. Joseph's argues: (1) Plaintiff's detention was initiated pursuant to the legal authority provided by the Marchman Act; and (2) St. Joseph's was prohibited from releasing her without first providing emergency medical services, which caused her temporary detention as a matter of course.

Plaintiff responds that St. Joseph's is simply disputing the factual allegations that she has asserted. Plaintiff alleges that she was detained without legal authority, because her claim is premised on St. Joseph's *noncompliance* with the Marchman Act's provisions. See Everett v. Fla. Inst. of Tech., 503 So. 2d 1382, 1383 (Fla. 5th DCA 1987)(holding that a claim for false imprisonment can be asserted based on allegations that a person was involuntarily held without compliance with the provisions of the Baker Act); Liles v. P.I.A. Medfield, Inc., 681 So. 2d 711, 712 (Fla. 2d DCA 1995) (same). Plaintiff alleges that she did not meet the criteria for

10

commitment under the Marchman Act. Likewise, Plaintiff challenges whether emergency medical services were, in fact, needed.

St. Joseph's asserts the affirmative defense that Plaintiff's medical records show that it had probable cause to detain Plaintiff under the Marchman Act. See Johnson v. Barnes & Noble Booksellers, Inc., 437 F.3d 1112, 1116 (11th Cir. 2006)(stating that "the defendant may challenge the claim of an unlawful detention by asserting the lawfulness of the detention as an affirmative defense"). While the existence of an affirmative defense does not necessarily mandate dismissal, a court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when the "allegations [in the complaint] indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." Quiller v. Barclays American/Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984). In determining whether St. Joseph's affirmative defense mandates dismissal, this Court must either limit itself to the allegations within the complaint or, at its discretion, treat the motion as one for summary judgment. See Universal Express, Inc. v. U.S. S.E.C., 177 Fed. Appx. 52, 53 (11th Cir. 2006). The Court will not convert St. Joseph's motion into a motion for summary judgment in order to consider Plaintiff's medical records. The facts alleged in the complaint support Plaintiff's assertion that her involuntary commitment lacked probable cause. As such, any affirmative defenses St. Joseph's may wish to raise do not appear on the face of the complaint and thus do not warrant dismissal of Plaintiff's false imprisonment claim.

Lastly, St. Joseph's asserts that Plaintiff cannot seek attorneys' fees and expert fees, pursuant to 42 U.S.C. § 1988, in connection with her false imprisonment claim. Plaintiff fails to respond to this argument. However, Plaintiff's request for remedies that are not available does

not mandate dismissal of her false imprisonment claim. Rather, the Court will simply strike her request for attorneys' fees and expert fees, pursuant to 42 U.S.C. § 1988, in connection with her false imprisonment claim. Accordingly, for the reasons set forth above, the Court denies St. Joseph's motion to dismiss Plaintiff's false imprisonment claim.

### C. Assault and Battery

Plaintiff asserts an assault and battery claim against St. Joseph's based on her contention that through threat and intimidation, St. Joseph's medicated Plaintiff against her will. St. Joseph's argues that this claim must be dismissed, because it is immune from suit.

St. Joseph's points to Florida Statute § 401.45(2), which provides that a hospital "responding to an apparent need for emergency treatment under this section is not liable in any action *arising out of a refusal to render emergency treatment or care* if reasonable care is exercised in determining the condition of the person and in determining the appropriateness of the facilities and the qualifications and availability of personnel to render such treatment." Fla. Stat. § 401.45(2)(emphasis added). Plaintiff's claim, however, does not relate to St. Joseph's *refusal* to render treatment; her claim is that St. Joseph's rendered medical treatment to her against her will.

Next, St. Joseph's points to Florida Statute § 401.445(1), which provides immunity for *individuals* who examine or treat a patient without the patient's consent, as long as: (1) the patient is intoxicated and unable to consent; (2) the patient is experiencing an emergency medical condition; and (3) the patient would reasonably consent if advised and able to do so. St. Joseph's has not shown that § 401.445 applies to hospitals, and even if it did, there is a factual dispute as to whether Plaintiff was unable to consent and whether she was experiencing an emergency

medical condition.

St. Joseph's asks the Court to consider Plaintiff's medical records. The medical records raise a factual dispute regarding the issues of whether Plaintiff was too intoxicated to consent, whether she was experiencing an emergency medical condition, whether St. Joseph's was required to render medical treatment pursuant to Florida Statute § 395.1041(3)(a),[3] and whether the medical treatment that was rendered was required. If St. Joseph's wishes to rely on the medical records, it should file a motion for summary judgment.

Next, St. Joseph's argues that the assault and battery claim must be dismissed with prejudice due to Plaintiff's failure to comply with the pre-suit requirements applicable to claims for medical malpractice/negligence. St. Joseph's contends that this failure cannot be cured because the two-year limitations period for claims of medical malpractice/negligence has expired.

As explained by one court:

> Chapter 766 of Florida Statutes contains the pre-suit requirements for medical malpractice suits. Prior to sending notice of intent to file a medical malpractice suit, the claimant must investigate to determine whether reasonable grounds exist to support a claim for medical negligence and have a medical expert write an opinion corroborating those reasonable grounds. Fla. Stat. § 766.203(2). After the investigation is complete, the claimant must send notice of intent to sue for medical negligence to each prospective defendant and wait 90 days for the defendant or the defendant's insurer to determine the potential liability of the defendant and send a response to the claimant. Fla. Stat. § 766.106(2)–(3).

---

[3]Florida Statute §§ 395.1041(3)(a) requires a hospital with an emergency department to provide emergency services and care for an emergency medical condition when requested by an emergency medical services provider that is rendering care to or transportation of the person. St. Joseph's contends that Plaintiff arrived at St. Joseph's via ambulance.

Neal v. Parker, 2017 WL 443163, at *6 (N.D. Fla. Jan. 11, 2017)(adopted by 2017 WL 440727 (N.D. Fla. Feb. 1, 2017)).

Plaintiff responds that her claim is not one for medical negligence or malpractice. Plaintiff points out that she is not claiming that the drugs given to her were medically improper; instead, her claim is based on her being medicated by St. Joseph's without her consent and against her will. Therefore, she contends that she was not required to comply with the pre-suit requirements of Chapter 766 of the Florida Statutes.

There is very little case law on the issue of whether this type of claim falls within the confines of Chapter 766. However, as explained below, this Court finds that compliance with the pre-suit requirements of Chapter 766 is not required under the facts of this case.

For example, in Neal v. Parker, one of the claims before the court was a claim that a doctor performed a surgery on the plaintiff without his consent. See id. at *1. The court stated that it could construe the claim liberally as a battery rather than a claim for medical negligence. See id. at *6. While the court declined to exercise supplemental jurisdiction over the claim, the court treated the claim, to the extent that it was construed as a battery claim, as one that did not require compliance with the pre-suit requirements for medical negligence claims. See id. at *6 n.3.

Likewise, in Roberts v. Davol, Inc., one of the claims before the court was a claim that a doctor implanted a medical device in the plaintiff without obtaining his consent to using a recalled version of the device. 2010 WL 9593054, at *1 (S.D. Fla. June 1, 2010). In determining whether the plaintiffs were required to comply with the pre-suit requirements for medical negligence claims, the court focused on the fact that the plaintiff had consented to the surgery to

14

implant the device; the plaintiffs simply claimed that they did not consent to the use of a *recalled* device in the surgery.  See id. at *2.  The court pointed out that "Florida recognizes a battery claim against a doctor for a medical procedure when there is a 'total lack of consent,' but a claim of uninformed consent constitutes medical malpractice."  Id.  Because the plaintiffs acknowledged that consent had been given, the court construed the claim as one that required the plaintiffs to comply with the pre-suit requirements for medical negligence claims.  See id.

Accordingly, this Court rejects St. Joseph's argument that compliance with the pre-suit requirements of Chapter 766 was required.  As such, the Court denies St. Joseph's motion to dismiss the assault and battery claim.

### D.  Civil Conspiracy

Plaintiff also asserts a civil conspiracy claim against St. Joseph, alleging that it conspired with the other defendants to violate her constitutional rights and to falsely imprison her.  St. Joseph's argues that to the extent that the conspiracy claim is based on Defendants' violating her constitutional rights, the claim must be dismissed for the same reasons as the § 1983 claim.  The Court agrees.

Additionally, St. Joseph's argues that Plaintiff fails to sufficiently state a conspiracy claim.  In order to state a claim for civil conspiracy, Plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  Raimi v. Furlong, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997).  St. Joseph's argues that Plaintiff has failed to allege sufficient facts to show that Defendants reached an agreement to falsely imprison her; she does not even allege any

communications between Defendants.

In response, Plaintiff states that "[c]learly there were communications and an agreement between Defendants, because Plaintiff was transferred from one's care to another. . . . [T]he parties clearly knew at some point that Plaintiff did not qualify for the Marchman Act, yet [they] worked together to falsely imprison Plaintiff." (Doc. No. 18, p. 12–13). Plaintiff is simply making assumptions, and such is not sufficient to adequately allege a conspiracy claim. Accordingly, the Court dismisses this claim without prejudice.

### E. Sanctions

St. Joseph's has also filed a motion for Rule 11 sanctions, arguing that Plaintiff's complaint was filed solely to harass St. Joseph's. Federal Rule of Civil Procedure 11(b) provides that by signing a complaint, the attorney certifies that, after a reasonable inquiry and to the best of the person's knowledge: (1) the complaint is not being filed for an improper purpose; (2) the claims asserted are not frivolous; and (3) there is, or likely will be, evidentiary support for the factual allegations contained therein. As explained by the Eleventh Circuit:

> The objective standard for testing conduct under Rule 11 is "reasonableness under the circumstances" and "what was reasonable to believe at the time" the pleading was submitted. This court requires a two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous. Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose. Although sanctions are warranted when the claimant exhibits a "deliberate indifference to obvious facts," they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law. . . . [T]he purpose of Rule 11 is to deter frivolous

lawsuits . . . .

Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998)(footnotes omitted).

St. Joseph's points out purported errors in (and disputes with) Plaintiff's factual allegations, but at this early stage in the proceedings, the Court does not know and cannot find that Plaintiff has asserted intentionally false or misleading factual allegations in her complaint. And while the Court has dismissed Plaintiff's § 1983 and civil conspiracy claims, the Court does not find that those claims were frivolous or asserted for an improper purpose. Accordingly, the Court denies St. Joseph's motion for sanctions.

## IV.  ACTS' and Troutman's Motion to Dismiss

ACTS and Troutman also move to dismiss all of the claims asserted against them. As explained below, their motions to dismiss are granted in part and denied in part.

### A.  Subject Matter Jurisdiction

ACTS and Troutman argue that this Court lacks subject matter jurisdiction over this case, because Plaintiff's § 1983 claim fails. However, even if true, ACTS and Troutman fail to acknowledge that a federal question has been asserted in this case—Plaintiff asserts a claim for declaratory relief, asking the Court to declare that the Marchman Act is unconstitutional because it violates federal due process and liberty rights. See Saint Vil v. Perimeter Mortgage Funding Corp., 630 Fed. Appx. 928, 932 (11th Cir. 2015)(finding a federal question where the plaintiff challenged the constitutionality of a state statute). Accordingly, the Court finds that it has federal question jurisdiction, and it can exercise supplemental jurisdiction over the state law claims.

### B.  Troutman's Employment

Troutman argues that Plaintiff wrongly identifies her as working for Gracepoint, when in

fact, Troutman worked for ACTS at the time of Plaintiff's detention. Troutman submits an affidavit attesting to this fact. However, the Court cannot consider the affidavit without converting her motion to dismiss into a motion for summary judgment, which this Court declines to do. Furthermore, even if the Court found that Troutman was employed by ACTS rather than Gracepoint, that fact alone would not cause any of Plaintiff's claims against Troutman to be subject to dismissal.

Additionally, Troutman argues that she never met Plaintiff, citing to her own affidavit once again. Therefore, Troutman argues that she could not have committed an assault or battery on Plaintiff. This too is a factual dispute, and the Court cannot consider this evidence on a motion to dismiss. Troutman is free to raise this issue in a motion for summary judgment.

### C. Section 1983

Next, ACTS and Troutman argue that the § 1983 claims asserted against them should be dismissed, because they are not state actors. The Court agrees and finds that for the same reasons explained above when ruling on St. Joseph's motion to dismiss the § 1983 claim asserted against it, this claim fails as to ACTS and Troutman. Accordingly, the Court grants their motion to dismiss the § 1983 claims asserted against them.

### D. False Imprisonment

Next, ACTS and Troutman argue that the false imprisonment claims asserted against them must be dismissed, because Plaintiff has not adequately alleged that her detention was unlawful under the Marchman Act. Specifically, ACTS and Troutman point out that Plaintiff alleges that she was detained for 72 hours, and the Marchman Act provides that a person can be

detained for 72 hours for observation. Fla. Stat. § 397.6797.[4] However, Plaintiff alleges that she never met the requirements for detention under the Marchman Act, and therefore, she contends that her detention was unlawful.[5] Accordingly, the Court denies their motion to dismiss the false imprisonment claims asserted against them.

### E.  Assault and Battery

Next, ACTS and Troutman argue that the assault and battery claims fail, because Plaintiff does not make specific allegations that she was unlawfully touched or that she was threatened with harm.  However, Plaintiff alleges that "ACTS—through threat, intimidation, and control—forced the Plaintiff to consume a medication against her will."  (Doc. No. 1, ¶ 95). Likewise, Plaintiff alleges that Troutman "forced through threat, intimidation and control the Plaintiff to consume a medication against her will."  (Doc. No. 1, ¶ 69).  The Court finds that these allegations are sufficient to allege an unlawful touching and that Plaintiff was threatened with harm.

---

[4]Florida Statute § 397.6797 provides that within 72 hours after an emergency admission to a hospital, the individual must be assessed by the attending physician to determine the need for further services.  Based upon that assessment, the individual must either: (1) be released, or (2) be further detained if (a) she voluntarily consents, or (b) a petition for involuntary assessment or treatment has been filed with the court.

[5]Plaintiff also argues that even if her initial detention was lawful, it became unlawful once she no longer met the involuntary commitment criteria.  She contends that, at the very least, prior to her release, she had no longer met the involuntary commitment criteria, yet she was not immediately released.  In support of her argument, Plaintiff cites to a provision of the Marchman Act pertaining to protective custody by law enforcement.  Specifically, Florida Statute § 397.677 provides that a law enforcement officer can implement protective custody measures under certain circumstances.  Florida Statute § 397.6773(1)(a) provides that an individual who is in protective custody must be released when the individual no longer meets the involuntary admission criteria of the Marchman Act.  Nowhere in Plaintiff's complaint does she allege that she was being held in protective custody by law enforcement, making § 397.6773(1)(a) inapplicable.

Next, ACTS argues that as a corporate entity, it can only be liable under a theory that these acts were done by its employees or agents. Further, ACTS argues that because Plaintiff does not allege that an employee or agent of ACTS touched or physically threatened her, the claim fails. The Court is not persuaded by this argument, as a corporation can only act through its employees and agents. Plaintiff alleges that ACTS forced her to take medicine against her will, and the only way that ACTS could do that is through its employees and/or agents. Accordingly, the Court denies ACTS' and Troutman's motions to dismiss the assault and battery claims asserted against them.

### F.  Civil Conspiracy

Next, ACTS and Troutman argue that the civil conspiracy claim must be dismissed, because Plaintiff fails to allege that they had knowledge of the alleged conspiracy or that they knowingly participated in it. Plaintiff responds to this argument in the same way she did to St. Joseph's motion on this issue. For the same reasons as discussed above relating to St. Joseph's motion, the Court finds that Plaintiff is simply making assumptions regarding ACTS' and Troutman's knowledge of a conspiracy, and such is not sufficient to adequately allege a conspiracy claim. Accordingly, the Court dismisses this claim against them without prejudice.

## V.  Gracepoint's Motion to Dismiss

Gracepoint also moves to dismiss all four of the claims asserted against it. As explained below, the motion to dismiss is granted in part and denied in part.

### A.  Subject Matter Jurisdiction and § 1983 Claim

Gracepoint makes that same arguments that were made by ACTS and Troutman regarding the alleged lack of subject matter jurisdiction over this case and the insufficiency of the § 1983

claim.  For the same reasons given with respect to ACTS' and Troutman's motions, the Court

finds that it has federal question subject matter jurisdiction over this case and that the § 1983

claim against Gracepoint fails.  Accordingly, the Court grants Gracepoint's motion to dismiss the

§ 1983 claim asserted against it.

### B.  False Imprisonment and Assault and Battery Claims

Next, Gracepoint moves to dismiss the false imprisonment and assault and battery claims

due to Plaintiff improperly seeking damages pursuant to § 1988.  The Court finds that the

improper reference to § 1988 in relation to these claims does not mandate dismissal of those

claims; instead, the Court will strike such requests for damages from those two claims.

Accordingly, the Court denies Gracepoint's motion to dismiss the false imprisonment and assault

and battery claims asserted against it.

### C.  Civil Conspiracy Claim

Next, Gracepoint moves to dismiss the civil conspiracy claim, in which Plaintiff alleges

that Gracepoint conspired with the other defendants to violate her constitutional rights and to

falsely imprison her.  Gracepoint argues that since the conspiracy claim is based on Defendants

violating her constitutional rights, the claim must be dismissed for the same reasons as the

§ 1983 claim.  The Court agrees that to that extent, the claim is subject to dismissal.

However, it appears that Gracepoint did not realize that the civil conspiracy claim relates

to both a § 1983 violation and false imprisonment.  Therefore, Gracepoint does not make any

further argument that this claim is subject to dismissal, unlike the other defendants that argued

that the claim should be dismissed for lack of allegations regarding an agreement between

Defendants.  Given that the Court has already found that the civil conspiracy claim is not

sufficiently pled, the Court finds that that conclusion applies to the claim as a whole as it relates to all four of the defendants. Accordingly, the Court grants Gracepoint's motion to dismiss the civil conspiracy claim asserted against it.

## VI. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     St. Joseph's Hospital's Motion to Dismiss (Doc. No. 8) is **GRANTED** to the extent that Plaintiff's § 1983 claim (Count IV) is dismissed with prejudice and her civil conspiracy claim (Count XIII) is dismissed without prejudice; otherwise, the motion is **DENIED**.

(2)     Agency for Community Treatment Services, Inc.'s Motion to Dismiss (Doc. No. 12) is **GRANTED** to the extent that Plaintiff's § 1983 claim (Count VII) is dismissed with prejudice and her civil conspiracy claim (Count XIII) is dismissed without prejudice; otherwise, the motion is **DENIED**.

(3)     Gracepoint's Motion to Dismiss (Doc. No. 16) is **GRANTED** to the extent that Plaintiff's § 1983 claim (Count X) is dismissed with prejudice and her civil conspiracy claim (Count XIII) is dismissed without prejudice; otherwise, the motion is **DENIED**.

(4)     Pamela Troutman's Motion to Dismiss (Doc. No. 31) is **GRANTED** to the extent that Plaintiff's § 1983 claim (Count I) is dismissed with prejudice and her civil conspiracy claim (Count XIII) is dismissed without prejudice; otherwise, the motion is **DENIED**.

(5)     St. Joseph's Hospital's Motion for Sanctions (Doc. No. 23) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 5th day of August, 2019.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record