UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIKA BORTOLOTTI,

    Plaintiff,

v.                                           Case No. 8:19-cv-1072-T-24AAS

GRACEPOINT, ST. JOESPH'S
HOSPITAL, INC, PAMELA
TROUTMAN, individually, and
AGENCY FOR COMMUNITY
TREATMENT SERVICES, INC.,

    Defendant,
_____/

## ORDER

The defendant, Gracepoint, seeks better responses to interrogatories from the plaintiff, Ms. Erika Bortolotti, production of documents requested from Ms. Bortolotti, and updated information about Ms. Bortolotti's damages as required in Rule 26 disclosures. (Doc. 45). Ms. Bortolotti opposes Gracepoint's motion. (Doc. 47). For the reasons explained below, Gracepoint's motion to compel is **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.     **BACKGROUND**[1]

Ms. Bortolotti met her friend to celebrate Cinco de Mayo. (Doc. 1, ¶ 10). At some point during the evening, Ms. Bortolotti's friend grew concerned Ms. Bortolotti

---

[1] This section's facts are taken from Ms. Bortolotti's complaint. (Doc. 1).

1

did not look well and took her to St. Joseph's Hospital. (*Id.* at ¶ 12). While at St. Joseph's Hospital, the emergency room doctors determined Ms. Bortolotti met the requirements for involuntary commitment under the Marchman Act. (*Id.* at ¶¶ 15, 19). St. Joseph's Hospital transferred Ms. Bortolotti to a facility run by Agency for Community Treatment Services (ACTS) (*Id.* at ¶ 22) and then to Gracepoint, a drug and alcohol rehabilitation facility (*Id.* at ¶¶ 27–28). Ms. Bortolotti was committed for seventy-two hours. (*Id.* at ¶ 58).

Ms. Bortolotti now sues St. Joseph's Hospital, ACTS, Gracepoint, and Pamela Troutman for claims under Florida common law from a 2017 Marchman Act involuntary commitment. (Doc. 1). As to Gracepoint, only Ms. Bortolotti's Florida common law causes of actions for false imprisonment and assault and battery survived Gracepoint's motion to dismiss. (Doc. 40, pp. 20–22).

On July 9, 2019, Gracepoint served Ms. Bortolotti with interrogatories. (Doc. 45, p. 4). On August 8, 2019, Ms. Bortolotti answered those interrogatories but raised objections and refused to answer several interrogatories. (*Id.*). On July 9, 2019, Gracepoint also served Ms. Bortolotti with document requests. (*Id.* at p. 8). On August 8, 2019, Ms. Bortolotti also responded to Gracepoint's document requests but raised objections and refused to produce some documents. (*Id.*). Gracepoint seeks better responses to its discovery requests and an update to Ms. Bortolotti's calculation of her damages. (Doc. 45).

## II. LEGAL STANDARD

A party may obtain discovery about any nonprivileged matter relevant to any

party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Discovery helps parties ascertain facts that bear on issues in the case. *ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1340 (11th Cir. 2017) (citations omitted). However, requests for production should be clear, concise, and reasonably particularized. Middle District Discovery (2015) at III(A)(1).

A party may move for an order compelling discovery from the opposing party. Fed. R. Civ. P. 37(a). The party moving to compel discovery has the initial burden of proving the requested discovery is relevant and proportional. *Douglas v. Kohl's Dep't. Stores, Inc.*, No. 6:15-CV-1185-Orl-22TBS, at *2 (M.D. Fla. Apr. 25, 2016) (quotation and citation omitted). The responding party must then specifically show how the requested discovery is unreasonable or unduly burdensome. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559–60 (11th Cir. 1985).

## III. ANALYSIS

Gracepoint moves for Ms. Bortolotti to provide complete answers to interrogatories asking about Ms. Bortolotti's employment and criminal history, medical, mental health, and substance abuse records, and social media accounts. (Doc. 45, pp. 4–9; 45-1). And Gracepoint moves for Ms. Bortolotti to produce responsive documents, including Ms. Bortolotti's criminal records, photos and videos from social media accounts, HIPAA authorizations, and medical, mental health, and substance abuse records. (Doc. 45, pp. 9–12; 45-1). Gracepoint also moves to have the court require Ms. Bortolotti to update her damages in her Rule 26 Initial Disclosures. (*Id.* at pp. 12–13).

3

As an initial matter, Ms. Bortolotti states in her response to Gracepoint's motion that "she will not be seeking damages from Gracepoint or the other defendants for harm to her reputation." (Doc. 47, p. 1). However, the operative complaint contains a claim for damages based on harm to Ms. Bortolotti's reputation, and also seeks damages for loss of liberty, mental anguish, loss of capacity for enjoyment of life, great humiliation, and mental suffering. The complaint controls what discovery is relevant and proprortional to this case. If Ms. Bortolotti wishes to remove her claim for harm to her reputation and no longer seeks damages for loss of liberty, mental anguish, loss of capacity for enjoyment of life, great humiliation, and mental suffering, she must seek leave to file an amended complaint with this court. Fed. R. Civ. P. 15(a)(2).

Ms. Bortolotti uses boilerplate objections of vague, overbroad, and not calculated to lead to the discovery of admissible evidence and often a combination of these boilerplate objections. (Docs. 45-1, 45-3). As clarified by the 2015 amendments to the Federal Rules of Civil Procedure, using boilerplate objections is improper. *See* Fed. R. Civ. P. 34. Federal Rule of Civil Procedure 34(b)(2)(B) now requires the responding party "state with specificity the grounds for objection to the request, including the reasons."

In her response to Gracepoint's motion, Ms. Bortolotti generally concludes she provided sufficient answers to Gracepoint's interrogatories and sufficient responses to Gracepoint's document requests. (Doc. 47, p. 13). Before reaching that conclusion, Ms. Bortolotti puts forth eight arguments for why she should not have to respond

4

further to Gracepoint's interrogatories and document requests. (*Id.* at pp. 4–12).

First, Ms. Bortolotti argues Florida Statute § 397.675 forbids the information Gracepoint seeks. (*Id.* at p. 4). Ms. Bortolotti asserts Gracepoint's discovery requests are an unlawful attempt to acquire Ms. Bortolotti's prior mental health records, which she refused to give during her commitment under the Marchman Act. (*Id.*). Second, Ms. Bortolotti argues the information Gracepoint seeks is irrelevant to the decisions made by Gracepoint to commit Ms. Bortolotti under the Marchman Act in May 2017. (*Id.* at pp. 5–6). Third, Ms. Bortolotti argues Gracepoint already obtained the information sought in its discovery requests through public records requests. (*Id.* at p. 6). Fourth, Ms. Bortolotti argues no prior or subsequent incidents involved any determinations related to the May 2017 involuntary commitment under the Marchman Act. (*Id.* at p. 7).

Fifth, Ms. Bortolotti argues Gracepoint and the other defendants put her mental state at issue by involuntarily committing her under the Marchman Act. (*Id.* at pp. 8–9). Sixth, Ms. Bortolotti argues discovery about other incidents and her physical and mental health history will annoy, embarrass, and oppress her. (*Id.* at p. 9). Ms. Bortolotti asserts Florida's precedent prevents the defendants from using prior or subsequent information to justify wrong behavior or to embarrass, annoy, or oppress a victim. (*Id.* at p. 10). Seventh, Ms. Bortolotti argues discovery related to prior and subsequent incidents is burdensome and a waste of time because Ms. Bortolotti's claims focus on whether Ms. Bortolotti met the criteria for involuntary commitment under the Marchman Act in May 2017. (*Id.* at pp. 11–12). Last, Ms.

Bortolotti argues if the court allows this discovery, the court gives organizations like Gracepoint an incentive to unjustly detain individuals because they can collect the evidence after the commitment to prove their case. (*Id.* at p. 12).

### A. Interrogatories

1. Interrogatory Number 2

**Interrogatory No. 2:** List the names, business addresses, dates of employment and rates of pay regarding all employers, including self-employment, for which you have worked in the past ten (10) years.

**RESPONSE**: This question is overly broad and remote, and as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action, nor to the discovery of admissible evidence. The question invades the Plaintiff's right to privacy, is impermissibly overbroad and, therefore, oppressive and burdensome, and irrelevant to the subject matter of this action in that seeks disclosure of personal and private information.

Specifically, this case is about the wrongful imprisonment, violation of the Plaintiff's civil rights and the assault and battery (drugging) of the Plaintiff on or about May 5, 2017 to May 8, 2017. The Plaintiff is not making a lost wage claim nor is the Plaintiff seeking damages for her inability to work as a result of the allegation in the complaint.

(Doc. 45, pp. 4–5). Gracepoint argues Ms. Bortolotti puts her employment history directly at issue because she claimed this commitment under the Marchman Act tarnished her professional reputation and will have far reaching professional consequences. (*Id.* at p. 5). Gracepoint also claims review of Ms. Bortolotti's work history will help determine what her professional reputation might have been both before and after this Marchman Act involuntary commitment. (*Id.*).

Basic information about Ms. Bortolotti's past employment is relevant and proportional to the needs of the case. However, information about Ms. Bortolotti's

6

rate of pay at her previous employment is irrelevant and not proportional to the needs of the case because she is not pursuing a lost wage claim. Ms. Bortolotti's general employment history will provide Gracepoint with information about Ms. Bortolotti's professional career and her professional reputation. Thus, Ms. Bortolotti's only must answer Gracepoint's Interrogatory Number 2 with the names, business addresses, and dates of employment for all employers, including self-employment, from May 2012 (i.e., five years prior to the incident) to the present.

2. Interrogatory Number 4

> **Interrogatory No. 4:** Have you ever been arrested at any time either before or after the subject incident? If so, state the date, location and arresting agency, the charges upon which you were arrested, and the disposition of any such charges.
>
> **RESPONSE**: This question is overly broad and remote, and as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action, nor to the discovery of admissible evidence. The question invades the Plaintiff's right to privacy, is impermissibly overbroad and, therefore, oppressive and burdensome, and irrelevant to the subject matter of this action in that seeks disclosure of personal and private information.
>
> The Plaintiff was wrongly imprisoned from approximately May 5, 2017 to May 8, 2017. Any prior or subsequent arrests, convictions or legal actions prior to May 5, 2017 or subsequent to May 8, 2017 have no relevance to whether or not the imprisonment of the Plaintiff was legal, correct or violative of her civil rights.

(Doc 45, p. 5). Gracepoint argues because Ms. Bortolotti makes claims for harm to her professional reputation, loss of liberty and freedom, pain and suffering, mental anguish, and loss of capacity for the enjoyment of life, Gracepoint should be able to determine the extent this commitment under the Marchman Act caused her damages. (*Id.* at p. 6).

7

Generally, the information requested is relevant. However, seeking such a broad timeframe of records is disproportional to the needs of the case. Thus, Ms. Bortolotti must answer Gracepoint's Interrogatory Number 4 with information about her criminal history from May 2012 until present.

3. Interrogatory Number 16

**Interrogatory No. 16:** List the names and business addresses of all other physicians, medical facilities, healthcare providers, and/or substance abuse treatment providers by who or at which you have been examined or treated in the past ten (10) years; and state as to each, the dates of examination or treatment and the condition or injury for which you were examined or treated.

**RESPONSE**: This question is overly broad and remote, and as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action, nor to the discovery of admissible evidence. The question invades the Plaintiff's right to privacy, is impermissibly overbroad and, therefore, oppressive and burdensome, and irrelevant to the subject matter of this action in that seeks disclosure of personal and private information.

The Plaintiff was wrongfully imprisoned from approximately May 5, 2017 to May 8, 2017 by the Defendants. Any medical treatment prior or post is irrelevant and oppressive. The issue in this case relates to the information the Defendants had at the time of the wrongful imprisonment of the Plaintiff.

(Doc 45, p. 6). Gracepoint argues the discovery is directly relevant to the issues of liability and damages since Ms. Bortolotti claims she has never been eligible for commitment under the Marchman Act. (*Id.* at p. 6). Gracepoint asserts Ms. Bortolotti put her mental and physical health at issue since she is making a claim for pain and suffering, mental anguish, and loss of capacity for the enjoyment of life. (*Id.*).

The subset of information that is relevant and proportional is responsive information about any treatment for mental health or substance abuse issues only

8

and during the narrower timeframe of May 2012 to present. Thus, Ms. Bortolotti must answer Gracepoint's Interrogatory Number 16 with the names and business addresses of any physicians, medical facilities, and healthcare providers where she sought treatment for mental health or substance abuse issues since May 2012.

4. Interrogatory Number 24

**Interrogatory No. 24:** Please identify all Social Networking Site accounts registered to you and/or to which you have access including those to which were registered to you and/or to which you had access at any time since the date of the incident that is the subject of this litigation, and provide the username and registered e-mail address for each such account.

**RESPONSE**: This question is overly broad and remote, and as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action, nor to the discovery of admissible evidence. The question invades the Plaintiff's right to privacy, is impermissibly overbroad and, therefore, oppressive and burdensome, and irrelevant to the subject matter of this action in that seeks disclosure of personal and private information.

Furthermore, this action is based upon what Defendants knew at the time Plaintiff was wrongfully committed. Without waiving said objection, no information regarding the events of this lawsuit were posted on any website of any sort, as the Defendants took my phone and did not allow me to post anything on social media.

(Doc 45, p. 7). Gracepoint argues it is not seeking the passwords to Ms. Bortolotti's social media accounts but simply for her to identify her accounts by username and registered email. (*Id.* at p. 7). Gracepoint also asserts the information found on social media is highly relevant and any claims of privacy or privilege is not a reasonable one since the individual shares the information through social media. (*Id.* at p. 7–8). Gracepoint points to both Florida state courts and federal courts that concluded privilege or right of privacy does not exists for posts on social media regardless of the

9

individual's privacy settings. (*Id.* at p. 8).

Ms. Bortolotti's usernames and email addresses associated with social media accounts registered to her is information that is relevant and proportional to the needs of this case. However, seeking information for a social media account for which Ms. Bortolotti broadly may have had access is overbroad and confusing. By way of example, if Ms. Bortolotti has access to a family member's account, the usernames and email addresses associated with those accounts are not relevant or proportional to this case. Thus, Ms. Bortolotti must answer Gracepoint's Interrogatory Number 24 with all social media accounts registered to her from May 2012 to present and provide the usernames and email addresses associated with those accounts.

**B. Request for Production**

1. Request for Production Number 6

**Request for Production No. 6**: Executed HIPAA authorizations directed to each and every physician and facility where you have been treated in the past ten (10) years (provided). If additional forms are needed, copies of the attached form may be used.

**RESPONSE/OBJECTION**: This question is overly broad and remote, and as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action, nor to the discovery of admissible evidence. The question invades the Plaintiff's right to privacy, is impermissibly overbroad and, therefore, oppressive and burdensome, and irrelevant to the subject matter of this action in that seeks disclosure of personal and private information.

Specifically, this case is about the wrongful imprisonment, violation of the Plaintiff's civil rights and the assault and battery (drugging) of the Plaintiff on or about May 5, 2017 to May 8, 2017, and the information known to the Defendants at that time.

(Doc 45, pp. 8–9). Gracepoint argues Ms. Bortolotti put her medical history,

10

substance abuse history and treatment, and mental health history and treatment at issue by bringing her claims. (*Id.* at p. 9). Gracepoint asserts medical providers rarely respond to a subpoena unless accompanied by a signed authorization. (*Id.*). Gracepoint notes it is providing blank authorizations because Ms. Bortolotti provided no information about who her medical and mental health providers are. (*Id.*).

This request appears to require Ms. Bortolotti to create documents to then produce to Gracepoint. Rule 34 addresses the production of documents that already exist. If the executed HIPAA authorizations already exist for places and providers where Ms. Bortolotti sought treatment for mental health or substance abuse treatment from May 2012 to present, Ms. Bortolotti needs to produce those existing executed forms. To the extent that the executed forms do not exist, a request for documents is not the proper procedure. If Ms. Bortolotti refuses to sign HIPAA authorizations, Gracepoint can move the court to compel her to sign the authorizations.

    2. <u>Request for Production Number 7</u>

**Request for Production No. 7**: Any and all medical records, hospital records, emergency room records, mental health records, substance abuse treatment records, and records from any other healthcare provider pertaining to the treatment of any injuries sustained by you in the subject incident.

**RESPONSE/OBJECTION**: This question is overly broad and remote, and as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action, nor to the discovery of admissible evidence. The question invades the Plaintiff's right to privacy, is impermissibly overbroad and, therefore, oppressive and burdensome, and irrelevant to the subject matter of this action in that seeks disclosure of personal and private information.

> Specifically, this case is about the wrongful imprisonment, violation of the Plaintiff's civil rights and the assault and battery (drugging) of the Plaintiff on or about May 5, 2017 to May 8, 2017, and the information known to the Defendants at that time.

(Doc 45, p. 9). Gracepoint argues this request is limited to any records related to treatment Ms. Bortolotti received because of her being placed in protective custody from the May 2017 Marchman Act involuntary commitment. (*Id.*). Gracepoint asserts the request seeks to discover what treatment Ms. Bortolotti received after the incident to determine the extent of her claims. (*Id.* at pp. 9–10).

The requested discovery is relevant and proportional to determine the effect of the Marchman Act involuntary commitment in May 2017 in evaluating Ms. Bortolotti's claims for loss of liberty, mental anguish, loss of capacity for enjoyment of life, great humiliation, and mental suffering. Thus, Ms. Bortolotti needs to produce the requested documents.

3. <u>Request for Produce Number 8</u>

**Request for Production No. 8**: Any and all medical records, hospital records, emergency room records, and records from any other healthcare provider pertaining to the treatment of any reason in the <u>five (5) years prior</u> to the subject incident

**RESPONSE/OBJECTION**: This question is overly broad and remote, and as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action, nor to the discovery of admissible evidence. The question invades the Plaintiff's right to privacy, is impermissibly overbroad and, therefore, oppressive and burdensome, and irrelevant to the subject matter of this action in that seeks disclosure of personal and private information.

Specifically, this case is about the wrongful imprisonment, violation of the Plaintiff's civil rights and the assault and battery (drugging) of the Plaintiff on or about May 5, 2017 to May 8, 2017, and the information known to the Defendants at that time.

12

(Doc 45, p. 10). Gracepoint argues Ms. Bortolotti put her physical and mental state directly in issue with her claims and Gracepoint needs to conduct discovery in her medical history to understand and defend against Ms. Bortolotti's claims. (*Id.*).

The information requested is relevant and proportional as to Ms. Bortolotti's medical records, hospital records, emergency records, and records from healthcare providers relating to any treatment she sought for mental health or substance abuse issues only. However, seeking records from any healthcare provider for any ailment or issue is overbroad and not relevant. Medical records for visits for minor illnesses or routine medical procedures provide no information as to Ms. Bortolotti's claims for loss of liberty, mental anguish, loss of capacity for enjoyment of life, great humiliation, and mental suffering because of the May 2017 Marchman Act involuntary commitment. Thus, Ms. Bortolotti only must produce medical records from any healthcare providers who treated Ms. Bortolotti for mental health or substance abuse issues since May 2012.

4. Request to Produce Number 16

**Request for Production No. 16:** All court documents reflecting any criminal action initiated against you for any reason since your eighteenth birthday.

**RESPONSE/OBJECTION**: This question is overly broad and remote, and as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action, nor to the discovery of admissible evidence. The question invades the Plaintiff's right to privacy, is impermissibly overbroad and, therefore, oppressive and burdensome, and irrelevant to the subject matter of this action in that seeks disclosure of personal and private information.

Specifically, this case is about the wrongful imprisonment, violation of

the Plaintiff's civil rights and the assault and battery (drugging) of the Plaintiff on or about May 5, 2017 to May 8, 2017, and the information known to the Defendants at that time.

(Doc 45, p. 10). Gracepoint argues since Ms. Bortolotti makes claims for harm to her professional reputation, loss of liberty and freedom, pain and suffering, mental anguish, and loss of capacity for the enjoyment of life, Gracepoint should be able to determine whether the involuntary commitment under Marchman Act in May 2017 caused her significant damages. (*Id.* at p. 11). Gracepoint argues it should be allowed to explore Ms. Bortolotti's criminal history because there is significant history of intoxicated arrests. (*Id.*).

The information requested is relevant and proportional as to Ms. Bortolotti's court documents from any criminal actions since May 2012. However, seeking court documents since Ms. Bortolotti's eighteenth birthday is overbroad because it seeks over twenty years of criminal history.[2] Thus, Ms. Bortolotti must produce any court documents she has from any criminal action since May 2012.

　　5. Request to Produce Numbers 23 & 24

**Request for Production No. 23:** Any and all photographs posted by you or depicting you that have been uploaded to any Social Networking Site account from May 5, 2015 to the present date. This includes videos[3]

---

[2] Even though no information in the docket provides Ms. Bortolotti's exact age, Ms. Bortolotti provided in her interrogatory answers that she was married from March 1997 to September 2006. (Doc. 45-1). If the court infers Ms. Bortolotti was 18, the minimum age to marry Florida Statute § 741.04, when she got married in 1997, then she would be at minimum forty years old at the time of this proceeding.

[3] Based on the context, Request for Production No. 23 should have stated "photographs" instead of video since the first part of the request specifically focuses on photographs and Request for Production No. 24 addresses videos posted to social media.

14

posted by others for which you have been tagged or otherwise identified therein.

**Request for Production No. 24:** Any and all videos posted by you or depicting you that have been uploaded to any Social Networking Site account from May 5, 2015 to the present date. This includes videos posted by others for which you have been tagged or otherwise identified therein.

**RESPONSE/OBJECTION:**[4] This question is overly broad and remote, and as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action, nor to the discovery of admissible evidence. The question invades the Plaintiff's right to privacy, is impermissibly overbroad and, therefore, oppressive and burdensome, and irrelevant to the subject matter of this action in that seeks disclosure of personal and private information.

Specifically, this case is about the wrongful imprisonment, violation of the Plaintiff's civil rights and the assault and battery (drugging) of the Plaintiff on or about May 5, 2017 to May 8, 2017, and the information known to the Defendants at that time.

(Doc 45, p. 11). Gracepoint argues the court should allow this social media discovery because it is not overbroad because previous courts found a request for photographs and videos from social media from two years before the incident to the present is reasonable. (*Id.* at p. 11). Gracepoint argues this information is relevant because Gracepoint needs to understand Ms. Bortolotti's quality of life before and after the incident to understand how the 2017 Marchman Act involuntary commitment affected her professional reputation and her life. (*Id.* at pp. 11–12).

---

[4] Because both requests involve social media, Gracepoint combines the two requests together in its discovery motion. (Doc. 45, p. 11). Ms. Bortolotti's objection is the same for both requests. (Doc. 45-3). Thus, the court will address the two requests as a single request for both photographs and videos posted by Ms. Bortolotti or by others where Ms. Bortolotti is tagged or identified in either the photo or video.

The information requested is relevant and proportional as to photos and videos posted by Ms. Bortolotti. For the tagged photos, Ms. Bortolotti is only to produce photos or videos she can identify from her Facebook photo page called "Photos of You" and Instagram tagged photo tab. However, seeking all the photos and videos where Ms. Bortolotti is identified is unduly burdensome because even though individuals can tag others, a person may post a photo without a tag but identify Ms. Bortolotti in the caption. This request, as written, would require Ms. Bortolotti to search all of her friends' pages on every social media site to determine whether there are photos of her where she is identified but not tagged. However, the court notes Ms. Bortolotti must preserve the status quo and not seek to have the tags removed to hide any photos or videos from discovery. Additionally, Ms. Bortolotti needs to only produce photos or videos for the date range specified in Gracepoint's request.

C. **Initial Disclosures**

Gracepoint argues Ms. Bortolotti failed to provide sufficient information regarding her damages claim to satisfy the requirements of Rule 26(a)(1)(A)(iii) because the disclosures do not allow Gracepoint to understand the damages being claimed, and it is unclear whether Ms. Bortolotti is making a claim for economic damages. (Doc. 45, pp. 12–13). And Gracepoint argues Ms. Bortolotti had enough time to determine what her initial claimed damages would be and to provide the calculations and basis for the damages. (*Id.* at p. 13). In response, Ms. Bortolotti contends she provided adequate information in her amended Rule 26 disclosures and with her responses to Gracepoint's interrogatories. (Doc. 47, pp. 13–14). Ms.

16

Bortolotti argues the damages amount she is seeking is not of definite value and she has no documents to help calculate damages because Gracepoint objected to many of her requests for production.  (*Id.* at p. 14).

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) states "a party must, without awaiting a Federal Rule discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party [and] make available . . . the documents or other evidentiary material . . . on which each computation is based."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  "Plaintiffs should be able to make a good faith estimate of damages and methods of calculations based on the information available at this stage of the litigation, while reserving the right to amend their calculations."  *LeBlanc v. Unifund CCR Partners, G.P.*, No. 8:06-cv-1216-T-TBM, 2007 WL 2446900, at *1 (M.D. Fla. Aug. 23, 2007).  After the initial disclosures, Rule 26(e) provides that parties must supplement and correct those disclosures "in a timely manner" during litigation.  *See* Fed. R. Civ. P. 26(e).  Gracepoint's motion is granted to the extent Ms. Bortolotti must update, and continue to update as necessary, her initial disclosures with a sum reflecting the amount she seeks for damages.  In other respects, the motion is denied.

### D. Request for Reasonable Costs and Fees

Upon review of the papers, the court concludes each party must be responsible for its own attorneys' fees and costs incurred with this motion.  *See* Fed. R. Civ. P. 37(a)(5)(C). The court also reminds the parties that "[d]iscovery in this district should be practiced with a spirit of cooperation and civility."  Middle District Discovery

(2015) at I(A)(1). Further, the court "expects attorneys to reach agreements regarding the production of documents based upon considerations of reasonableness, convenience and common sense." *Id.* at III(B)(1).

## IV. CONCLUSION

As explained in greater detail above, Gracepoint's motion to compel (Doc. 45) is **GRANTED-IN-PART and DENIED-IN PART**. Ms. Bortolotti must provide amended responses to Interrogatory Nos. 2, 4, 16, and 24, and Request to Produce Nos. 6, 7, 8, 16, 23, and 24, no later than **December 11, 2019**.

**ORDERED** in Tampa, Florida on November 20, 2019.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge