# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ERIKA BORTOLOTTI,

      **Plaintiff,**

v.                                     **Case No. 8:19-cv-1072-T-24AAS**

GRACEPOINT, ST. JOESPH'S
HOSPITAL, INC, PAMELA
TROUTMAN, individually, and
AGENCY FOR COMMUNITY
TREATMENT SERVICES, INC.,

      **Defendant,**

_____/

## ORDER

Erika Bortolotti seeks to compel entry to land for inspection of Gracepoint and

Agency for Community Treatment Services, Inc. (ACTS). (Doc. 68). Gracepoint and

ACTS oppose this motion. (Docs. 77, 79).

## I.    BACKGROUND

On May 5, 2017, Ms. Bortolotti met with a friend to celebrate Cinco de Mayo.

(Doc. 68, p. 1). Because of Ms. Bortolotti's behavior from that night, law enforcement

took Ms. Bortolotti into custody under the Marchman Act. (Doc. 77, p. 1). First, Ms.

Bortolotti received emergency medical treatment at St. Joseph's Hospital. (*Id.* at pp.

1–2). Ms. Bortolotti was then transported to Gracepoint, who operates a Central

Receiving Facility that "serves as the central intake for the assessment and referral

of adults suffering from . . . substance abuse crises." (Doc. 79, p. 1). Then, Gracepoint

1

assessed Ms. Bortolotti and then transferred her to ACTS for stabilization and further assessment.  (*Id.* at p. 2; *see also* Doc. 77, p. 2).  Ms. Bortolotti was committed for 72 hours as the Marchman Act prescribes.  (Doc. 79, p. 2).

Ms. Bortolotti now sues St. Joseph's Hospital, ACTS, Gracepoint, and Pamela Troutman for claims under Florida common law from a 2017 Marchman Act involuntary commitment.  (Doc. 1).  As to Gracepoint, only Ms. Bortolotti's Florida common law causes of actions for false imprisonment and assault and battery survived Gracepoint's motion to dismiss.  (Doc. 40, pp. 20–22).  The same common law causes of actions for false imprisonment and assault and battery survived ACTS' motion to dismiss.  (*Id.* at pp. 17–20).

On January 10, 2020, Ms. Bortolotti emailed Gracepoint and ACTS requesting an inspection of each facility where Ms. Bortolotti was held and to take "photographs to document the conditions under which [Ms. Bortolotti] was housed while at their facilities."  (Doc. 70, ¶ 1).  Ms. Bortolotti provided dates for the inspection and that no photos would be taken of the current patients and the inspection would take about thirty minutes.  (*Id.*).  Both Gracepoint and ACTS opposed Ms. Bortolotti's request based on lack of relevancy and concern over the current patients.  (*Id.* at ¶¶ 3, 5).  On January 17, 2020, Ms. Bortolotti sought to compel entry to land for inspection (Doc. 59), which the court denied without prejudice because Ms. Bortolotti failed to comply with the Local Rules (Doc. 60).  Ms. Bortolotti renews her motion to compel entry to land for inspection of Gracepoint and ACTS facilities.  (Doc. 65).

## II.    LEGAL ARGUMENTS

Ms. Bortolotti argues the inspection of ACTS and Gracepoint are essential for the jury to understand the circumstances and conditions she was exposed to during her involuntary commitment in 2017.  (Doc. 65, pp. 3–4).  Ms. Bortolotti asserts the request is relevant to her claims and the defendants' defenses.  (*Id.* at p. 4).  Ms. Bortolotti argues the inspections will enable her to determine whether the location and conditions comply with the right to individual dignity under Florida Statute § 397.501(1).  (*Id.*).  Ms. Bortolotti argue her requests "fall squarely within the kind of inspections that are permitted under Rule 34."  (*Id.*).  Ms. Bortolotti asserts the Gracepoint and ACTS have control over the locations to permit the inspection.  (*Id.* at p. 5).

ACTS argue the requested discovery is irrelevant because the proposed photographs would be taken three years after the incident and Ms. Bortolotti has not asked whether the conditions or food served now are the same or like the conditions or food served in 2017.  (Doc. 77, p. 3).  ACTS assert if the discovery were relevant, the burden of the inspection, which would disrupt the treatment and invade the privacy of the current patients, greatly outweighs any de minimis benefit Ms. Bortolotti would get.  (*Id.* at pp. 3–4).  ACTS argue the legal authority cited by Ms. Bortolotti contradicts her position and shows a high standard required for inspection she cannot meet.  (*Id.* at p. 5).  ACTS assert Ms. Bortolotti's benefit, either negligible or nonexistent, is significantly outweighed by the potential injury to the patients

whose identity will be revealed in violation of state and federal statutes and the Florida constitution. (*Id.* at pp. 6–7).

Gracepoint argues Ms. Bortolotti's request to inspect the facility is not relevant to any claims or defenses asserted here. (Doc. 79, p. 4). Gracepoint asserts the inspection of the facility does not affect Ms. Bortolotti's remaining claims, false imprisonment and assault and battery, which are not based on Gracepoint's conditions or measurements. (*Id.* at pp. 4–5). Gracepoint argues Ms. Bortolotti's request disrupts the patients seeking treatment and Ms. Bortolotti has not sought other less intrusive means such as asking for blueprints of the facility, photographs taken by Gracepoint, or deposing employees on the issues Ms. Bortolotti identifies as why the inspection is necessary. (*Id.*). Gracepoint asserts the suggestion that the patients be removed from treatment and shuffled to another space is not plausible, much less a thoughtful, suggestion. (*Id.*).

## III.   LEGAL STANDARD

Requests for entry on land are governed by Rule 34 of the Federal Rules of Civil Procedure, which states:

> [a] party may serve on any other party a request within the scope of Rule 26(b) . . . to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a)(2). Additionally, the request: "(A) must describe with reasonable particularity each item or category of items to be inspected; (B) must specify a

reasonable time, place, and manner for the inspection and for performing the related acts; and (C) may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1). "As contemplated by Rule 34, the scope of permissible inspections is governed by Rule 26(b) of the Federal Rules of Civil Procedure." *Powers v. Hartford Ins. Co. of the Mw.*, No. 8:10–cv–1279–T–AEP, 2010 WL 11508159, at *1 (M.D. Fla. Nov. 2, 2010).

Rule 26 requires discovery be "relevant to any party's claims or defense and proportional to the needs of the case, . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Discovery must be proportional to the needs of the case, and the courts are guided by the non-exclusive list in Rule 26(b)(1).[1] "'Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses.'" *Digital Assurance Certification, LLC v. Pendolino*, No. 6:17–cv–72–Orl–41TBS, 2017 WL 4342316, at *9 (M.D. Fla. Sept. 29, 2017) (quoting *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014)).

---

[1] The court considers these factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1).

## IV.   ANALYSIS

Ms. Bortolotti cites two cases[2] in which a court allowed the inspection of a treatment facility.  (Doc. 65, p. 4).  In the first case, *New York State Ass'n for Retarded Children Inc. v. Carey*, the court allowed the inspection of a facility for a follow up assessment after the court had found the conditions to be grossly unsanitary and unsafe.  706 F.2d 956, 961 (2d Cir. 1983).  The conditions of the facility were central to the claims, specifically alleged inhuman conditions that violated the constitutional rights of the patients.  *Id.* at 958.  In the second case, *Morales v. Turman*, the court allowed the qualified experts—not attorneys—to do an observational study in the facility to understand the conditions of confinement.  59 F.R.D. 157, 158 (E.D. Tex. 1972).  The court found the inspection would be minimal as the experts would live as patients in the facility and the claims focused on the children's alleged constitutional violations because of confinement in this facility.  *Id.* at 159.  These two cases show significant consideration given to inspection of treatment facilities.

Ms. Bortolotti's request to inspect the Gracepoint and ACTS facilities is not relevant to her remaining claims.  Ms. Bortolotti's remaining claims include a challenge to the constitutionality of the Marchman Act, false imprisonment,[3] and

---

[2] Ms. Bortolotti also cites a third case, *Welzel v. Bernstein*, 233 F.R.D 185 (D.D.C 2005), but the request for inspection was of an office, not a treatment facility, and the inspection of the office in that case was directly relevant to the claims.

[3] The "elements of a cause of action for false imprisonment include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and

assault and battery.[4]  (Doc. 40, pp. 17–21).  The conditions of Gracepoint and ACTS are not relevant to her common law claims.  The conditions of the facility and food she was served are not relevant to Ms. Bortolotti's challenge to the constitutionality of the Marchman Act because Ms. Bortolotti is not challenging whether she was treated with individual dignity as required by the statute but instead challenges the whole Marchman Act as unconstitutional.

The burden of Ms. Bortolotti's discovery request outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1).  Ms. Bortolotti seeks to disrupt the daily life of the patients at these facilities seeking assistance for mental health or substance abuse issues so her attorney may photograph the facilities three years after the events at issue.  Instead, Ms. Bortolotti could use her own testimony to describe the facility for the jury based on her personal knowledge.  Disrupting the routine of the patients puts an enormous burden on the defendants and also implicates many privacy laws in exchange for what little (if any) benefit the inspection has to Ms. Bortolotti's case.

---

unwarranted under the circumstances." *Mathis v. Coats*, 24 So. 3d 1284, 1289-1290 (Fla. 2d DCA 2010)(quoting *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006) (internal citations omitted)).

[4] Under Florida law, assault is "an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril," and battery is "the intentional infliction of a harmful or offensive contact upon the person of another." *Cutino v. Untch*, 79 F. Supp. 3d 1305, 1315 (S.D. Fla. 2015) (internal citations omitted).

## V.    CONCLUSION

Because Ms. Bortolotti's request to inspect Gracepoint and ACTS facilities seeks discovery that is not relevant and the burden on Gracepoint and ACTS outweighs any likely benefit to Ms. Bortolotti, the motion to compel entry to land for inspection (Doc. 68) is **DENIED.**

**ORDERED** in Tampa, Florida on February 26, 2020.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge